AARON F. VANCE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84413.    Filed June 20, 1961.

*Dickinson Thatcher, Esq.*, for the petitioner.
*Lawrence S. Kartiganer, Esq.*, and *L. Justin Goldner, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined deficiencies in petitioner's income tax of $288.23 in 1955, $312 in 1956, and $312.48 in 1957. By amended answer respondent affirmatively pleaded new matter which increased the deficiencies for 1955 and 1956 by $444.86 and $273.20, respectively. The questions for decision are:

(1) Whether petitioner furnished more than half of the support of each of his two minor children during each of the years in question;

(2) Whether petitioner suffered a casualty loss in 1955, under section 165 of the Internal Revenue Code of 1954,[1] of $1,022 when furniture was repossessed because of default on a loan; and

(3) Whether petitioner suffered a theft loss of household fixtures in 1956.

The last two questions were raised affirmatively by respondent in an amended answer.

### FINDINGS OF FACT.

Some of the facts have been stipulated and they are found accordingly.

Petitioner, Aaron F. Vance, resided in Pomona, California, in 1955 and part of 1956; in Van Nuys, California, for part of 1956, and in Sherman Oaks, California, for part of 1956 and all of 1957. His income tax returns for the years in question were filed with the district director of internal revenue at Los Angeles, California.

Petitioner and Beverly J. Vance were married in 1948. Two children, Paul and Debra, were born to them. Petitioner's marriage to Beverly was annulled in April 1954 by a California court and petitioner was ordered to pay Beverly $25 per week for the support and maintenance of the children. The court amended these payments in November 1957 to $20 per week for Paul and $15 per week for Debra. Pursuant to the court orders, petitioner paid Beverly $1,250 in 1955, $1,175 in 1956, and $1,340 in 1957.[2]

Petitioner and Beverly were both employed by North American Aviation Corporation during the years in question. Petitioner's net salary, after deductions for FICA and Federal withholding taxes, was $8,522.66 in 1955, $9,663.49 in 1956, and $9,284.44 in 1957. Beverly's net salary, after the same deductions, was $3,957.02 in 1955, $4,403.66 in 1956, and $4,810.25 in 1957. In addition Beverly had available some additional funds from gifts, loans, a savings account, and insurance during the years in question.

During 1955, 1956, and 1957 Beverly had custody of the two children by virtue of the annulment decree. Petitioner had visitation rights with the children under the court order which he exercised during the years in question. It is stipulated he had the children in his care as follows:

|  |  | Hours |
|---|---|---|
| 1955 | Paul | 1, 876 |
|  | Debra | 1, 299 |
| 1956 | Paul | 2, 536 |
|  | Debra | 2, 536 |
| 1957 | Paul | 2, 724 |
|  | Debra | 2, 724 |

---

[1] All section references are to the Internal Revenue Code of 1954, as amended.

[2] These amounts are stipulated. No explanation appears for the apparent deviation from the amount ordered by the California court.

Beverly and the children lived in rented houses or apartments until sometime in 1957 when she purchased a house. She paid rent and utilities, purchased food, clothing, and furniture for the children, provided them with toys and entertainment, and paid medical and dental expenses when necessary. Because she worked during the day she paid for child care for them while she was away at work. She maintained an automobile for her own use and for that of the person caring for the children.

In addition to the amounts paid pursuant to the court order petitioner purchased some food, clothing, toys, paid some medical expenses, provided music and dancing lessons and entertainment for the children.

Petitioner claimed dependency deductions for both children on his income tax returns for the years 1955, 1956, and 1957. Respondent disallowed said deductions.

In 1953 petitioner borrowed $884.37 from a loan company secured by a chattel mortgage on furniture. On January 8, 1955, the furniture was repossessed by the finance company due to a default on the loan. Petitioner deducted $1,022 as a casualty loss on his 1955 tax return for the repossessed furniture. By amended answer respondent affirmatively pleaded an increased deficiency based on the disallowance of this amount.

In 1955 Beverly moved from the house which she and petitioner had occupied prior to the annulment of their marriage. On leaving she removed a laundry tray with its attendant plumbing, a metal cabinet, special chimes, mercury switches, and a television aerial. Some of the items were later returned. On his income tax return for 1956 petitioner deducted $998 and described the deduction as "Theft of household fixtures * * * and legal expenses in connection with theft & title to property." In the amended answer respondent affirmatively pleaded an increased deficiency based on the disallowance of this amount.

#### OPINION.

Petitioner has the burden of proving that his two children were his "dependents" within the meaning of section 151(e). Section 152(a) defines the term dependent as here applicable as meaning a son or daughter of the taxpayer "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer." Thus it is petitioner's burden to establish not only what amount he contributed toward their support, but he must also show in some way that it exceeded one-half of their total support. Cf. *James H. Fitzner*, 31 T.C. 1252. The parties have stipulated that he paid $1,250 in 1955, $1,175 in 1956, and $1,340 in 1957 to Beverly under the court decree for the children's

550

support. Petitioner argues that he spent additional amounts for their support during these years, and respondent concedes that he spent a total of $1,390 in 1955,[3] $1,591.83 in 1956,[4] and $1,956.90 in 1957.[5] In addition to the items conceded by respondent, petitioner would substantially increase his contributions to include as support furnished by him a part of the estimated rental value of the home in which he and his mother lived ($810 in 1955, $680 in 1956, and $740 in 1957), life insurance premiums on insurance policies on the lives of the children ($55.64 in 1957), a portion of the cost of two organs which he bought in 1957 and installed in his own home ($355.40 in 1957), and automobile expenses for conveying the children between his home and theirs ($175 for each of the years involved). We do not consider any portion of the rental value of his house and furniture as a part of the support of the children. Beverly had custody of the children and the duty to provide them with a place to live. Petitioner was merely exercising his personal rights of visitation when he brought the children to his own home and he was under no necessity to provide a home for them. Life insurance premiums are not items of support. Portions of the purchase price of the organs which he installed in his own home are not allocable to the children's support and his own automobile expenses incurred in the exercise of his visitation rights would not be allocable to the children's support. We conclude that petitioner has proved only that he spent $1,390 in 1955, $1,591.83 in 1956, and $1,956.90 in 1957 for the support of the children.

Beverly testified as petitioner's witness as to the amounts she spent for the support of the children in the 3 years involved. Part of her testimony was substantiated by about 260 canceled checks and about 120 receipts which she testified represented amounts spent for the support of the children. Some of the support items to which she testified were based on her estimates. Her testimony is that she contributed the net amounts [6] of $2,205.63 in 1955, $2,301.16 in 1956, and $2,947.11 in 1957.[7] On brief petitioner attempts to show that Beverly overstated some of the items of support and that others are nonsupport items.

Petitioner has introduced no evidence which contradicts any of Beverly's testimony. He attempts to reduce the amounts of the sup-

---

[3] In addition to the support payments under the court order respondent admits petitioner spent a total of $140 for pictures and miscellaneous for both children together.

[4] In addition to the support payments under the court order respondent admits petitioner spent a total of $416.83 for a phonograph, medical care, hospital, clothing, music lessons, bicycles, watches, records, and miscellaneous.

[5] In addition to the support payments under the court order respondent admits petitioner spent a total of $616.90 for medical care, a water cooler, clothing, toys, music lessons, pictures, miscellaneous, and a portion of the price of a television set.

[6] The total amount of her support expenses less the stipulated amounts received from petitioner under the court decree.

[7] These totals contain some prorations made by respondent of amounts as to which Beverly supplied totals such as rent, health insurance, automobile expenses, and furniture.

port items to which she testified by arguing that her estimates should be accepted only to the extent they have been substantiated; that certain items such as rent should be allocated one-half to the children rather than two-thirds to the children; and that Beverly's estimate of food expenses should be prorated between petitioner and Beverly on the basis of the stipulated amount of time the children spent with each. No useful purpose would be served by setting forth petitioner's arguments in more detail because in the final analysis petitioner's challenge to each item must be decided against him for lack of proof. For the items in which allocation is necessary to determine the amount of the total item of expense which is attributable to the children, we accept respondent's prorations because petitioner has not shown that his are more realistic. Argument is no substitute for evidence in a case of this nature. What petitioner is arguing in effect is that the Court should accept only a fraction of each item to which Beverly testified without any testimony to support lesser figures. If we accept Beverly's testimony, then she has shown that she, not petitioner, provided more than one-half of the children's support. If we discount her testimony, then petitioner has failed to show the total amount of the children's support or that he furnished more than half of it, as he must. The record shows the total support of the children exceeded $3,400 for the years 1955 and 1956 and was in excess of $4,000 for the year 1957.

This is not a case in which a taxpayer, unable to establish the precise amount which the former wife contributed, has nevertheless been able to convince the Court by evidence of her income and the manner in which she lived that she did not contribute more than did he. *E. R. Cobb, Sr.*, 28 T.C. 595. On this record we hold petitioner has failed to prove he provided over one-half of his children's support during the years in question.

Petitioner deducted $1,022 on his 1955 income tax return as a casualty loss resulting from the repossession of furniture. Respondent raised the issue for the first time in the amended answer and so has the burden of proof. Petitioner testified that the amount claimed by him on his return as a deduction resulted solely from the repossession by a finance company of household furniture. He argues that Beverly had possession of the furniture and therefore the duty to make the payments and the repossession resulted from her default. Clearly, this is not a casualty loss within the meaning of section 165(c)(3) granting deductions for losses that "arise from fire, storm, shipwreck, or other casualty, or from theft." He argues the repossession amounts to a "theft" of the furniture. There was no theft. We hold for respondent on the issue.

Petitioner deducted $998 on his 1956 income tax return as a casualty loss from theft for the removal from a residence by Beverly of cer-

tain fixtures. Respondent raised the issue for the first time in the amended answer and has the burden of proof.

Petitioner testified Beverly took the "fixtures" consisting of a laundry tray, a metal cabinet including, as he said, "attendant plumbing," chimes, a television aerial, and mercury switches, when she vacated the Pomona house about the middle of 1955.

The record establishes he was not entitled to any deduction as to this item for several reasons. Again it is clear there was no *theft*. What is or is not a fixture often presents nice questions involving consideration of many factors such as intent when installed, the method of affixing, and the relationship of the parties. We need not pursue this for petitioner testified he and Beverly owned the Pomona house in joint tenancy. His testimony was that the so-called fixtures "were part of the house." He also testified the fixtures were removed in 1955; that the removal was discovered in 1955 and part of them (laundry tray, metal cabinet, and door chimes) were returned. Obviously he could have no theft loss in 1956.[8] Part of the claimed loss of $998 relates to legal fees petitioner paid to compel the return of some items. Such fees are not deductible.

*Decision will be entered under Rule 50.*

---

[8] SEC. 165. LOSSES.

(e) THEFT LOSSES.—For purposes of subsection (a), any loss arising from theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss.