Charles W. Bate v. Commissioner.
Bate v. Commissioner
Docket No. 2065-66.
United States Tax Court
T.C. Memo 1967-165; 1967 Tax Ct. Memo LEXIS 95; 26 T.C.M. (CCH) 780; T.C.M. (RIA) 67165; August 9, 1967
Charles W. Bate, pro se, 1226 42nd Ave., San Francisco, Calif. Robert M. Zimmerman, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency of $162.55 in petitioner's income tax for the taxable *96 year 1963. There are two issues for decision: (1) Is petitioner entitled to use the "head of household" tax rates in section 1(b)(1) of the Internal Revenue Code of 1954[1] and (2) is petitioner entitled to a dependency deduction under section 151(e)(1) for his daughter, Deborah. Findings of Fact Some of the facts have been stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Charles W. Bate (hereinafter referred to as petitioner) filed a Federal individual income tax return for the taxable year 1963 on the cash basis with the district director of internal revenue at San Francisco, California. Petitioner was a legal resident of San Francisco, California, when he filed the petition in this case. Petitioner and Mary Jane Bate (hereinafter referred to as Mary) were married in 1946. Deborah Mia Bate (hereinafter referred to as Deborah) was born on September 24, 1949. She is the legally adopted daughter of petitioner and Mary. Deborah was not married during 1963. On January 24, 1955, the *97 Superior Court of the State of California in and for the County of San Francisco, California, granted a final decree of divorce to Mary. The decree gave "actual physical" custody of Deborah to Mary, subject to a right of petitioner to "see and visit with" Deborah and to have her with him on weekends. The decree also ordered petitioner to pay Mary $50 a month for Deborah's support until Deborah's twenty-first birthday. In the years following the divorce, petitioner, Mary, and Deborah developed a pattern whereby Deborah stayed with Mary during the school week and with petitioner on weekends and school vacations. During 1963, Mary and R. V. Cottam (hereinafter referred to as Cottam) jointly occupied a house owned by Cottam in Los Gatos, California. There was a room in the house set aside for Deborah's private use. During 1963, petitioner rented and occupied a two-bedroom apartment in San Francisco, California. Petitioner set aside one of the bedrooms for Deborah's private use. In 1963, petitioner paid more than one-half of the total costs of maintaining the apartment including, among other items, rent, utilities, and groceries consumed on the premises. In the calendar year 1963, *98 Deborah spent at least 113 days at petitioner's apartment. She spent at least 207 days in Cottam's house. She spent 34 days on a summer trip to the East. [2]
During 1963, Deborah kept about threequarters of her clothing at Cottam's house. She kept the remainder of her clothes at petitioner's apartment. In 1963, Deborah earned $68 doing small jobs for petitioner and Mary. Deborah deposited $24 of this in a bank account and spent the rest in the same manner as her allowance. Pursuant to the above-mentioned divorce decree, petitioner paid $600 to Mary in 1963 for the use and maintenance of Deborah. Petitioner gave Deborah $96 during the year to cover part of her bus fares in traveling between Los Gatos and San Francisco. Petitioner in 1963 spent $150 for such items as Deborah's clothing, entertainment, and education. When Deborah traveled to the East, petitioner spent $128.08 to defray part of the cost of her trip. In 1963, petitioner paid a premium of $174.12 on an ordinary (nonterm) life insurance policy. Petitioner is the owner and insured of the policy. Deborah was the beneficiary of *99 the policy in 1963. Petitioner had the right to change the beneficiary. During 1963, petitioner spent $2 and $2.25 for, respectively, a copy of a birth certificate and a copy of Deborah's adoption proceedings. Petitioner used these documents to claim Social Security benefits. In 1963, petitioner paid rent for his apartment of $1,038. He paid $1,539 for general household expenses such as utilities and groceries. Deborah consumed part of the groceries when she stayed at petitioner's apartment. She usually ate breakfast, lunch, and dinner at his apartment on both Saturday and Sunday. Mary spent $1,141.21 during 1963 for the use and maintenance of Deborah. This was for items such as dentist's visits, furnishings for Deborah's room in the Cottam house, bus fares, wardrobe, food, school expenses, and utilities. Of this figure, $541.21 represented Mary's money and $600 represented money received from petitioner, referred to above. Mary purchased a piano in 1963. Her payments in that year for the piano totalled $172.65. Both Mary and Deborah used the piano. Mary did not pay rent to Cottam. She paid for the food consumed by Cottam, Deborah, and herself. She also paid the utility and *100 telephone bills of the Cottam house. In return, Deborah and Mary received rent-free lodgings. The fair rental value of Deborah's private room in the Cottam house was $18 per week. Cottam's costs in maintaining the house during 1963 totalled $2,760. When Deborah went East in the summer of 1963, she visited and traveled with Ruth Deck (hereinafter referred to as Ruth). Ruth gave $300 to cover part of the cost of Deborah's travel to and from the East. In addition, Ruth bought the food which Deborah consumed while staying at Ruth's house in Maine for two weeks. [3] Ruth also paid the travel and lodging expenses of Deborah when she and Deborah drove twice to New York City and once to Florida. Ruth paid for some of Deborah's meals and entertainment on these trips. In his Federal income tax return for 1963, petitioner took a dependency deduction for Deborah under section 151(e). He computed his tax liability with the head of household rates in section 1(b)(1). In his notice of deficiency for 1963, respondent *101 denied the dependency deduction on the ground that petitioner did not provide over one-half of Deborah's support. [4] He recomputed petitioner's tax liability with the single taxpayer rates of section 1(a) on the ground that petitioner was not entitled to use the special rates of section 1(b)(1). As to the latter point, the notice of deficiency contained the following: The Head of Household rate is denied because you did not maintain a home for an individual described in Section 1(b)(2), Internal Revenue Code. Opinion There are two issues for decision. The first is whether petitioner is entitled to use the "head of household" tax rates in section 1(b)(1) to compute his tax liability for 1963. Before reaching this issue, there is a procedural question. Petitioner contends that the statutory notice of deficiency was so poorly worded that it did not raise the tax-rate issue and that, therefore, it did not place the burden of proof on him. Petitioner's argument centers around the Commissioner's use of the word *102 "home," rather than "abode," in the deficiency notice. We hold that the notice of deficiency clearly apprised petitioner of the head of household issue and that the burden of proof is on him. Manuel D. Mayerson, 47 T.C. 340 (1966). Turning to the substantive issue, the question is whether petitioner was a "head of household" in 1963 as defined in section 1(b)(2). The only dispute is whether petitioner's apartment was Deborah's "principal place of abode." The Commissioner's Regulations provide that in order for a taxpayer's home to be the principal place of abode of another person the person must occupy the home for "the entire taxable year of the taxpayer." Regs. section 1.1-2(c)(1). This is a reasonable interpretation of the statute, in view of the Committee Reports which accompanied its original enactment. H. Rept. No. 586, to accompany H.R. 4473 (Pub. L. 183), 82d Cong., 1st Sess., p. 106 (1951); S. Rept. No. 781, to accompany H.R. 4473 (Pub. L. 183), 82d Cong., 1st Sess., p. 11 (1951). [5] The Regulations modify the requirement, however, to take account of temporary absences: The taxpayer and such other person will be considered as occupying the household for *103 such entire taxable year notwithstanding temporary absences from the household due to special circumstances. A non-permanent failure to occupy the common abode by reason of illness, education, business, vacation, military service, or a custody agreement under which a child or stepchild is absent for less than six months in the taxable year of the taxpayer, shall be considered temporary absence due to special circumstances. * * * [Regs. section 1.1-2(c)(1)] Although Deborah did not occupy petitioner's apartment during the entire year in question, petitioner contends that his home was her "principal place of abode" as interpreted by the Regulations because her absences come under the temporary absence rule. He argues that Deborah's summer trip comes under the vacation portion of the rule and the time she spent with Mary *104 comes under the education portion of the rule. We cannot agree. It is more reasonable to characterize Deborah's time at Mary's home as an absence due to a custody agreement than as an absence due to education. It is true that Deborah attended school while living with Mary. But that is only because the divorce decree gave custody to Mary during the school week. Since Deborah lived with Mary for at least 207 days during 1963, Deborah's absence from petitioner's apartment by reason of the custody arrangement was for a period greater than six months. This time away from petitioner's home, therefore, does not come under the custody portion of the temporary-absence rule. It follows that petitioner's apartment was not Deborah's "principal place of abode" as interpreted by the Regulations. Petitioner argues in the alternative that Deborah's intention should control whether his apartment was her principal place of abode. He admits that Deborah had at least two abodes in 1963 but argues that she viewed his as the principal one. We do not consider it necessary to deal with this argument. The record fails to disclose which of Deborah's two abodes, if either, she considered to be the principal *105 one. Since petitioner failed to prove Deborah's intent in this regard, it is not necessary to consider the possible effect of such intent on the issue at hand. [6]
We therefore conclude that petitioner's home was not Deborah's "principal place of abode" during 1963. It follows that petitioner is not within the definition of "head of household" for that year. Petitioner may not use the head of household tax rates to compute his tax liability for 1963. The second issue for decision is whether petitioner is entitled to a dependency exemption for Deborah in 1963 under section 151(e). The only dispute is whether petitioner provided over one-half of Deborah's "support" in 1963. The record indicates that there were five sources of Deborah's support in 1963. One was Deborah. During the year she earned $68. She put $24 of this in a bank account and spent the rest. The amount she spent -$44 - was a contribution to her own support. See Regs. section 1.152-1(a)(2)(ii). Another source of support for Deborah was Mary. Mary paid *106 $172.65 toward the purchase of a piano in 1963. Petitioner contends this cannot be included in the total of Deborah's support because the piano was Mary's property, not Deborah's. We do not agree. Use, not title, governs whether an item contributes to a person's support. Since both Mary and Deborah used the piano, however, only half the expense, or $86.32, should be included in Deborah's support. Mary also contributed to Deborah's support by paying for items such as dental care, bus fares, food, utilities, and furnishings for Deborah's room in the Cottam house. Mary testified that the total of those expenses was $541.21. Although petitioner does not question the inclusion of these items of support, he suggests that the amount is excessive due to Mary's not being a disinterested witness. We do not agree that the amount is excessive. We hold that Mary contributed $541.21 to Deborah's support in addition to the piano payments. A third source of Deborah's support in 1963 was Cottam, because of the room which she used in his house. Petitioner argues that the amount considered support because of this occupancy should be one-third of Cottam's cost of maintaining the house during the year, *107 not the fair rental value of Deborah's room. We cannot accept this argument. The firmly established rule is that fair rental value, not cost, is the measure of support furnished as lodging. Emil Blarek, 23 T.C. 1037 (1955), William M. Haynes, 23 T.C. 1046 (1955). See also, Regs. section 1.152-1(a)(2)(i). Petitioner claims that the fair rental value of Deborah's room in Cottam's house was computed on the basis of a furnished room, including utilities. He therefore argues that the fair rental value should be reduced by amounts which Mary spent for utilities and furnishings attributable to Deborah's room in 1963. We see nothing in the record which indicates whether the fair rental value of Deborah's room was computed on the basis of a furnished room, including utilities, or on the basis of an unfurnished room, not including utilities. Since petitioner did not produce evidence to support his argument, we hold against him on it. A fourth source of Deborah's support in 1963 was Ruth. Ruth gave $300 to cover Deborah's expenses traveling to and from the East. Petitioner argues that this contribution should not be considered "support." He contends that "support" *108 is limited to ordinary and necessary expenses and that Deborah's summer trip was neither ordinary nor necessary. We do not decide whether petitioner's statement of the law is correct because we do not think Deborah's trip was extraordinary or unnecessary. We therefore hold that Ruth's gift of $300 was a contribution toward Deborah's support. Ruth also made many expenditures during Deborah's month-long stay in the East for Deborah's food, lodging, travel, and entertainment. Nothing in the record indicates the amount of these expenses. It is not, however, necessary to pursue this matter. It will be seen that even without considering Ruth's expenses, other than her initial $300 gift, petitioner has not proved that he contributed over half of Deborah's support in 1963. It is now possible to establish the minimum amount of Deborah's support in 1963 which persons other than petitioner supplied. The total is at least $1,907.53, comprised of the following: Contribution by
Amount
Deborah
$ 44.00
Mary
627.53
Cottam
936.00
Ruth
300.00
Total
$1,907.53
The final source of Deborah's support during 1963 was petitioner. He claims that he contributed the following *109 items and amounts: Monthly payments under divorce decree
$ 600.00
Bus fares
96.00
Miscellaneous
150.00
Travel (trip to East)
128.08
Life insurance premium
174.12
Documents
4.25
Portion of apartment rent
552.00
Portion of general household expenses
313.62
Total
$2,018.07
The first three items are not in dispute. Since we hold that Ruth's expenses for Deborah's summer trip were support, we also hold that petitioner's expenses for the trip - $128.08 - were support. As to the fifth item, the general rule is that life insurance premiums are not includable in support. Aaron F. Vance, 36 T.C. 547 (1961). Petitioner argues that his premium is not under the rule. He claims that because of a special arrangement with the insurer his entire premium was attributable to the cost of insurance protection and that none of it built up a cash value which would ultimately redound to his benefit. We cannot accept petitioner's argument. The record is not sufficient to support his claim that the premium was solely for the cost of insurance protection. Although respondent disputes the rest of the items petitioner claims he contributed to Deborah's support, *110 it is not necessary to discuss them. Assuming, without deciding, that petitioner could prevail on all these items, the total figure for his contribution to Deborah's support in 1963 would be $1,843.95. Since this is less than the amount contributed by other persons - even excluding the undeterminable amount spent by Ruth - petitioner fails to meet the over-half requirement of section 152(a). We therefore hold that petitioner is not entitled to a dependency exemption for Deborah in 1963. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise specified.↩
2. The record is silent as to where Deborah spent the remaining eleven days of 1963.↩
3. There is a discrepancy between the stipulation and the testimony as to whether Ruth lived in Maine or New York City. The discrepancy is not material to any issue in the case.↩
4. Mary also took a dependency deduction for Deborah in her Federal income tax return for 1963. The Commissioner has not denied this deduction.↩
5. Petitioner cites Smith v. Commissioner, 332 F. 2d 671 (C.A. 9, 1964), reversing 40 T.C. 591↩ (1963), as invalidating this regulation. We think, however, that Smith is distinguishable. The problem in Smith was deciding which of two houses was the home of the taxpayer, not which one was the principal place of abode of the dependent.
6. Petitioner cites several cases in connection with this argument. We are satisfied that these cases are distinguishable from the facts of the case at bar.↩