Harvey E. Toponce and Ruth Helen Toponce v. Commissioner.
Toponce v. Commissioner
Docket No. 4884-66.
United States Tax Court
T.C. Memo 1968-101; 1968 Tax Ct. Memo LEXIS 198; 27 T.C.M. (CCH) 499; T.C.M. (RIA) 68101; May 28, 1968. Filed *198 Held: Petitioners have failed to prove that they provided more than one-half of the support for a minor child in 1963, and therefore are not entitled to a deduction for a personal exemption. Secs. 151(a), 151(ee, and 152(a). I.R.C. 1954. Harvey E. Toponce, pro se, P.O. Box 41, Clayton, Calif. Robert M. Zimmerman, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: Respondent determined a deficiency in petitioners' income tax for the year *199 1963 in the amount of $132. The only issue presented for determination is whether petitioners furnished over half of the support for his son, David, a minor child in the custody of his mother. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners herein are husband and wife and were residing in Contra Costa County, California, at the time the petition was filed. Their joint income tax return for the calendar year 1963 was timely filed with the district director of internal revenue at San Francisco, California. Ruth H. Toponce is a petitioner herein solely by reason of having filed a joint return with her husband for the year 1963. Harvey E. Toponce will hereinafter be referred to as petitioner or Harvey. 500 Petitioner was formerly married to the present Gail Swing. The minor child in issue, David Toponce, was born to Harvey and Gail in 1951. The marriage between Harvey and Gail was formally dissolved in February, 1953, when the Superior Court of the State of California, in and for the County of San Diego, issued a final decree of divorce. Both Harvey and Gail subsequently remarried. In a proceeding subsequent to the divorce *200 in the Superior Court of California in and for San Diego County the divorce decree of February 1953 was modified. In an order dated October 26, 1955, it was found that because of Harvey's duty assignment as a member of the United States Navy, including sea duty, he could not "visit the minor children of the parties at regular intervals." He was accordingly given "temporary custody" of the minor children during one weekend of each month from 4:00 p.m. on Friday until 8:00 p.m. on Sunday and for a period of one month during the summer school vacation period each year, provided that he advised their mother, petitioner's former wife, in advance, as to the weekend or month he desired to have such custody. Petitioner was also directed by this order to pay a fixed monthly sum each month for each child and to provide for free medical care for the children through the Navy in accordance with Navy Regulations. In the summer of 1962 the elder child of the Harvey-Gail marriage, Gary Toponce, went to live with his father. David continued to remain in the custody of his mother and lived with her and as a member of her household throughout 1963, the year before us. No issue is raised herein as *201 to the support of or dependency exemption claimed for Gary in 1963. He was claimed as an exemption by petitioner for 1963, as was David. Respondent disallowed the exemption claimed for David "for the reason that you have not established that you furnished more than half of your son's support for that year." Petition to this Court followed contesting this disallowance. During the year 1963, David resided with the petitioner from June 27 to August 5. He also stayed with petitioner that year for a period of seven days during the Christmas holidays, a period of four days during the Easter holiday, and on eight weekends from approximately 4:00 p.m. on Friday to approximately 5:00 p.m. on Sunday. At all other times during 1963, David resided with his mother, Gail Swing, in her home at San Rafael, California. Harvey was a Commander on active duty with the United States Navy and was assigned to Treasure Island, California, as executive officer during 1963. He resided on Yerba Buena Island, California, in a Government-owned house for which he forfeited quarters allowance of $157.65 per month. This house was a 5-bedroom spacious home located on a one-half acre landscaped lot. Petitioners' *202 gross income for the year 1963 was $9,270. Gail and her second husband, Donald Swing, lived at San Rafael, California, in a 4-bedroom home they had built in a tract subdivision. Living with them also in 1963 in addition to David was their daughter, Janet. This home had a fair market value of approximately $40,000 in 1963 and the furnishings were worth approximately $5,000 at that time. David had his own bedroom and in 1963 also had the use of his brother Gary's former bedroom for overnight visits by his friends, Gary having moved out to live with his father in 1962. Gail and Donald Swing had an annual income in excess of $9,850 in 1963. During 1963, Harvey furnished the following sums for David's support: Payments to Gail for David
$ 785.42
Gifts
50.00
Food
88.20
Clothing
20.00
Recreation
250.00
Miscellaneous 20.00
Total
$1,213.62
During 1963, Gail furnished the following sums for David's support: Food
$ 500.00
Lodging
1,045.00
Clothing
144.00
Utilities
96.00
Education
288.50
Medical & dental care
172.87
Recreation 546.25
$2,792.62
Less contribution from peti- tioner 785.42
$2,007.20
Thus petitioner's total *203 contribution to David's support was $1,213.62, and Gail's was $2,007.20. Ultimate Finding of Fact In 1963, petitioner did not contribute over half of the support of his son, David. 501 Opinion The question presented is whether petitioners are entitled to a deduction for a personal exemption in 1963 under section 151(a) and (e)(1).[1] Section 152(a) defines the term dependent as a son or daughter of the taxpayer over half of whose support was received from the taxpayer. The burden is on the petitioner to prove not only his own expenditures in support of David, but also that the amount he contributed exceeded one-half of the total support provided. Aaron F. Vance, 36 T.C. 547 (1961); Bernard C. Rivers, 33 T.C. 935 (1960). Although petitioner need not conclusively prove the exact or precise total cost of David's support, he must provide us with convincing evidence that the amount he provided exceeded one-half of that support. James E. Stafford, 46 T.C. 515 (1966). Petitioner has set out in definite figures the amounts he contends he contributed to David's *204 support in 1963. We have found that amount to be only $1,213.62. Petitioner urges us to find a larger figure by including further elements of support. He claims automobile expenses of $110 incurred in the exercise of his right to have David stay with him for certain specified periods and lodging and utilities of $471 for those periods. Petitioner further urges us to include $120, a figure he estimates is equal to the cost of a medical insurance policy to cover the free medical services David was entitled to because of petitioner's duty status in the United States Navy. He concludes that his total contribution to David's support in 1963 was $1,304.95, plus the $785.42 he paid to Gail Swing for David's support. We cannot so credit him as our findings reflect because he has not convinced us that he is entitled to include these additional items in the total of his contributions to David's support. Since petitioner did not incur any expense in connection with the furnishing of the medical services, he is not entitled to be credited with having furnished his estimated dollar value of the commercial cost of insuring for such free services. He did not contribute that amount to David's *205 support. He has not shown that he contributed any amount for either medical or dental expenses or insurance and so we cannot allow this item. See Rev. Rul. 64-223, C.B. 1964-2, 50. Petitioner argues that he be credited with contributing additional items of support in 1963 as follows: Recreation and Transportation
[1] $285.75
Lodging and Utilities
471.00
We have found that petitioner contributed $250 to David's support for recreation. This is a most generous allowance in light of the extremely confused evidence as to this item in the record and petitioner's arguments on brief; the record will just not support an additional amount for recreation. Petitioner testified as follows about this: In the recreation area I claim, I now claim $425.75, which is based on the fact that for my family of four I maintained three saddle horses for our recreational purpose during that year *206 and that my son, David, enjoyed the use of those saddle horses each time that he visited me. He then proceeded to testify that he and Ruth and Gary rode every weekend on both Saturday and Sunday throughout the year and that on Wednesday, his day off duty, he and Ruth rode, except that during the summer, when David was with him on weekends or on Wednesdays, he also rode. The total cost of maintaining the horses in 1963, he testified was $1,080, and that "dividing by four I arrived at a figure of $267 per year." He then added to this figure in his testimony "40 round trips" to the stables with David, 30 miles each way at ten cents a mile for a total of $240, which when divided by four made David's share $60. He further testified that early in 1963 he purchased one of the horses involved for $300; dividing this by four he concluded that he had made a further contribution to David's support that year of $75. However, he did not give this horse to David nor did David have any interest in it; it was Harvey's horse used by all four members in the family, by David only on occasion during 1963 and by the other three members 12 months of the year. Having already testified that he spent $2 *207 on theatre admissions for David in 1963, he then concluded that 502 "a total of $267 per year for recreation I spent on David." On brief in his total support table he shows $425.75 as his contribution for David's recreation in 1963 without citing a record reference. In his reply brief he argues that the fair rental value of the horses David rode in 1963 was $272.50 but there is no evidence before us to support such a finding or conclusion. We have resolved this difficult issue by a finding that the cost of recreation via horseback riding contributed by Harvey to David's support in 1963 was $250. We regard this figure as being a reasonable finding in light of the confusing and quite unsatisfactory evidence with respect to this item, and included in the allowance made by our findings was an amount for transporting David, along with the other family members who customarily made the trip to the stables anyhow. We are extremely doubtful that Harvey is entitled to claim transportation at ten cents a mile for David's trips to the stables; he was transporting himself and Ruth to ride and sometimes Gary too. David was just going along for the ride when he visited his father and the expense *208 was in no way incurred just for his benefit. As to the item for transportation of $110 included in the table set forth above, we must refuse to allow it as support paid. It is the estimated cost of driving back and forth between San Rafael and petitioner's home to transport David when he visited petitioner on weekends and during the summer. Again, as in the case of petitioner's claim for travel for recreation, he contends that he made trips at ten cents a mile, in this instance 11 trips of 100 miles each. In our view these trips and the expenses thereof were in exercise of petitioner's rights to have David visit him in his home on one weekend a month, providing that he advised Gail ten days in advance which weekend he desired to have the visit occur, and for one month in the summer provided he advised Gail 60 days in advance as to the month he desired to have that visit occur. As such, they were petitioner's personal expenses and not properly support items. Aaron F. Vance, supra. Petitioner urges that under the decree and order he was given "temporary custody" of David on weekends and during one month of the summer and that thereafter when David was with him his *209 expenses were all support items. We cannot agree; a reading of the entire order convinces us that because of petitioner's Navy duty he was given the option to select the periods of visitation. The order was entered after the court found that because of his Navy duty Harvey "cannot visit the minor children of the parties at regular intervals."If he did not so elect and express his desire ahead of time, David would have stayed on with his mother to whom permanent custody was obviously awarded. Support of a fixed sum was ordered for each and every month, including the summer, and petitioner has been given full credit for the support he paid during the entire year, stipulated to be $785.42. As we said in Aaron F. Vance, supra at 550: Petitioner was merely exercising his personal rights of visitation when he brought the children to his own home and he was under no necessity to provide a home for them. So here Gail had a duty to provide David with a home throughout the year. If Harvey did not "desire" to have David visit him on weekends or during the summer, David would have remained at home with the Swings. The expenses incurred during the temporary periods were personal *210 to petitioner and cannot be deemed support. This applies alike to the transportation expense of $110 claimed and to the other item claimed for lodging and utilities of $471 which we have not allowed. Respondent urges alternatively that petitioner's claim to lodging, if allowed at all, should be limited to a period not to exceed 67 days since that time was the total David spent in his home during 1963. We are certainly in agreement that this is proper. Harvey's claim was based upon one-fourth of the total yearly amount of the quarters allowance of $157.65 per month forfeited by Harvey for the house he occupied that year. If we were to allow any amount whatever for lodging during David's visits to his father in 1963 it would necessarily be limited to the approximately 2-month period he spent away from his mother's home and with his father. Instead of the $472.95 claimed for 12 months, the most that could be considered support would be approxmiately one-sixth of that amount or at most $80. Even if such an amount were considered support, which we do not recognize, petitioner would not have established that he provided in excess of one-half of David's support for 1963. 503 Petitioner *211 presented no persuasive or other evidence that contradicts Gail's testimony as to the expenditures she made for David's support in 1963. She was a forthright and convincing witness and is apparently a dedicated and devoted mother. No useful purpose would be served by detailing petitioner's statements and arguments as to why his estimates are correct and valid and Gail's are not. He has failed to prove that the support items contributed by his former wife are not as she stated and we have found them. Arguments and statements of this nature are not evidence. As our findings reflect, petitioner is the one who has blown up and inflated his claims to support items, not Gail. If we should disregard her testimony, then petitioner has not met his burden of proving total support for David in 1963; thus, we could not hold he had met his burden of establishing that his contribution exceeded one-half of it. Aaron F. Vance, supra. Since we have found that petitioners in fact contributed less than one-half of the total support for David, we must hold that they cannot have a deduction for a personal exemption for David in 1963. The support test of section 152 has not been met, nor *212 have petitioners carried their burden of proving their right to claim David as a dependent for 1963. Respondent's determination was correct and is sustained. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩
1. Total recreation claimed is $425.75 of which we have allowed $250 in our findings; the balance not allowed is $175.75. Transportation of David from his home to petitioner's on weekends and at summer visits is claimed in the amount of $110 as indicated above in our opinion.↩