Terence T. Camp and Alyne V. Camp v. Commissioner.
Camp v. Commissioner
Docket Nos. 2562-66, 3487-66.
United States Tax Court
T.C. Memo 1969-93; 1969 Tax Ct. Memo LEXIS 199; 28 T.C.M. (CCH) 527; T.C.M. (RIA) 69093; May 14, 1969, Filed Ben Heckathorn, Continental Life Bldg., Forth Worth, Tex., for petitioners. Daniel A. Taylor, Jr., for respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' income tax in the amount of $264 for each of the years 1962 and 1963. The only question presented is whether petitioners provided more than one-half of the total support of Melody Ann Camp *200 and Steven Patrick Camp, during either or both of the years 1962 and 1963. Findings of Fact During 1962 and 1963 Terence T.Camp and Alyne V. Camp (hereinafter referred to as Terence and Alyne, respectively) were husband and wife, and on the date their petitions were filed were legal residents of Fort Worth, Texas. They filed their joint income tax returns for 1962 and 1963 with the district director of internal revenue at Dallas, Texas. Melody Ann, Terence T., Jr., Deborah Ellen, and Steven Patrick Camp (hereinafter sometimes collectively referred to as the Camp children) are the children of Terence and his former wife, Gary Svalberg (hereinafter Gary). Terence and Gary were divorced on November 23, 1954. The divorce decree awarded custody of the Camp children to Gary, and directed Terence to make monthly payments for their support to the Office of the Collector of Child Support, Fort Worth, Texas. On December 2, 1955, the divorce decree was amended to direct Terence to provide monthly payments of $140 ($35 per child) for the support of the Camp children. As amended, the divorce decree was in effect during 1962 and 1963, except that on May 8, 1962, it was agreed that support *201 payments in arrears as of December 31, 1961, be forgiven. Pursuant to the divorce decree, Terence paid $1,220 and $1,578.30 into the Office of the Collector of Child Support during 1962 and 1963, respectively; during 1962 he also paid $115 for child support directly to Gary. Gary married James E. Svalberg (hereinafter James) in 1955, and in December 1961, they moved to San Antonio, Texas. At that time Gary left Melody, Deborah, and Steven with Terence in Fort Worth, Texas, because she did not have sufficient funds to support them; Terence, Jr., remained with her. This was a temporary arrangement and there was no change in the legal custody of the children. In January 1962 Melody, Deborah, and Steven moved to San Antonio to reside with Gary. From January 1962 to June 1962, Gary, James, the Camp children, and Jimmy Sue, the Svalbergs' daughter, lived with Gary's mother in San Antonio. In June 1962, Gary and James separated, and Gary, the Camp children, and Jimmie Sue moved into a rented apartment in Houston, Texas. 528 In August 1962, Gary and James were reconciled. Gary returned to San Antonio, and she and James purchased a residence where they, the Camp children, and Jimmy *202 Sue resided for the remainder of 1962 and 1963, except that Terence, Jr., attended school in Austin, Texas, from September 1 through December 31, 1963. In the summers of 1962 and 1963, the Camp children visited Terence in Fort Worth, and he took them on a vacation during each visit. Terence and Gary had agreed that during the period when the Camp children visited Terence, he would not make the child support payments provided by the divorce decree. While the Camp children were visiting Terence, he paid expenses on their behalf for food, recreation, vacation shoes and clothing, and some additional clothing. In 1963 Terence purchased a new pair of glasses for Terence, Jr., and paid medical expenses on behalf of Melody. Melody spent an additional two weeks with Terence in the summer of 1963 while recovering from a poison ivy infection. None of the Camp children had attained the age of 19 years as of December 31, 1963. The children had no gross income during 1962 and 1963, and did not contribute to their own support. During 1962 petitioners and the Svalbergs (Gary and James) respectively provided the following items of support: *10 Petitioners Item
Melody
Steven
Support payments
$333.75
$333.75
Vacation
32.50
32.50
Clothing
43.75
43.75
Food
25.00
25.00
Recreation 11.25
11.25 $446.25
$446.25
*203 03,00,13,13 *10 Svalbergs Item
Melody
Steven
Lodging
$200.00
$200.00
Food
255.00
255.00
Clothing
47.15
47.15
Cleaning & Laundry
53.57
53.57
Medical expenses
53.57
53.57
School lunches
63.00
63.00
School transportation
20.00
20.00
School supplies
25.00
25.00
Haircuts, etc
16.50
33.00
Contributions
13.00
13.00
Allowance
104.00
26.00
Gifts 50.00
50.00 $900.79
$839.29 During 1963 petitioners and the Svalbergs respectively provided items of support as follows: *10 Petitioners Item
Melody
Steven
Support payments
$ 394.58
$394.58
Vacation
50.00
50.00
Food
47.50
22.50
Recreation
6.25
6.25
Clothing
27.50
27.50
Medical expense 90.50 $ 616.33
$500.83 *10 Svalbergs Item
Melody
Steven
Lodging
$ 275.00
$275.00
Food
314.25
314.25
Clothing
47.15
47.15
Cleaning & Laundry
53.57
53.57
Medical expenses
163.57
53.57
School lunches
63.00
63.00
School transportation
45.00
22.50
School supplies
25.00
25.00
Haircuts, etc.
36.00
33.00
Contributions
13.00
13.00
Allowances
104.00
26.00
Gifts 75.00
50.00 $1,214.54
$976.04
*204 On their returns for 1962 and 1963, petitioners claimed dependency exemption deductions for Melody and Steven Camp. In the notices of deficiency, respondent disallowed these claimed deductions. Ultimate Finding of Fact Petitioners did not provide more than one-half of the support of Melody Ann Camp and Steven Patrick Camp. Opinion To be entitled to dependency exemption deductions for Melody and Steven, the burden rested with petitioners to show first, the total cost of the children's support, and second, that they expended more than half of that amount. See sections [1] 151(a) and (e) [2] and 152(a)(1). [3]
*205 529 The record clearly reveals the total cost of Melody's and Steven's support. Terence's own testimony establishes his outlays for this purpose; and the parties stipulated that the trial record in this proceeding would include the evidence presented in Docket No. 4553-67, James E. Svalberg and Gary E. Svalberg, in which Terence's former wife, Gary, claiming dependency exemption deductions for the same children, established the amount of the expenditures which she and her husband made for the support of the children. However, the record fails to show that petitioners provided more than half of the total cost of supporting Melody and Steven. Indeed, as detailed in our findings, we think it quite clear that James and Gary Svalberg, rather than petitioners, provided more than half of the total cost of supporting these two children. [4]
In making our findings, we have not included lodging furnished by Terence *206 for several reasons. Although Terence testified that he expended $2,250 as a down payment on a house, in anticipation that the children would remain with him indefinitely when they came to stay with him in late 1961, this expenditure was made prior to the years here involved. Furthermore, if an item of support is furnished in the form of property or lodging, the amount of that item is to be measured by its fair market value. Emil Blarek, 23 T.C. 1037, 1039 (1955); William C. Haynes, 23 T.C. 1046 (1955); sec. 1.152-1(a)(2)(i), Income Tax Regs. But Terence did not show the fair market value of the lodging which he furnished for the two children in 1962 and 1963 and, even if we could estimate such value, it would not be sufficient to affect our ultimate finding that he did not provide more than half the support for the children. Finally, Gary had legal custody of the children and the duty to provide them with a place to live. Consequently, Terence was merely exercising his personal visitation rights when he brought the children to his own home in the summers of 1962 and 1963. Aaron F. Vance, 36 T.C. 547, 550 (1961). *207 Terence testified that he had agreed with Gary that he would claim two of the children as dependents and she would claim the other two, and relies upon this agreement to support his claim to exemptions for Melody and Steven. But petitioners made no effort to establish a multiple support agreement meeting the requirements of section 152(c); [5] otherwise, under section 152 (a)(1) the dependency exemption deduction is allowable only to the person who, in fact, contributed more than half of the dependent's total support. *208 Decisions will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted. ↩
2. SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS. (a) Allowance of Deductions. - In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income. * * * (e) Additional Exemption for Dependents. - (1) In general. - An exemption of $600 for each dependent (as defined in section 152) - (A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $600, or (B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student. * * * ↩
3. SEC. 152. DEPENDENT DEFINED. (a) General Definition. - For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) as received from the taxpayer): (1) A son or daughter of the taxpayer, or a descendant of either, * * *↩
4. Although the evidence does not indicate the source of the funds expended by the Svalbergs for support of the children, even if we assume that Terence's support payments were used for this purpose, the Svalbergs still contributed over half of the support of each child.↩
5. SEC. 152. DEPENDENT DEFINED. * * * (c) Multiple Support Agreements. - For purposes of subsection (a), over half of the support of an individual for a calendar year shall be treated as received from the taxpayer if - (1) no one person contributed over half of such support; (2) over half of such support was received from persons each of whom, but for the fact that he did not contribute over half of such support, would have been entitled to claim such individual as a dependent for a taxable year beginning in such calendar year; (3) the taxpayer contributed over 10 percent of such support; and (4) each person described in paragraph (2) (other than the taxpayer) who contributed over 10 percent of such support files a written declaration (in such manner and form as the Secretary or his delegate may by regulations prescribe) that he will not claim such individual as a dependent for any taxable year beginning in such calendar year.↩