Richard E. Godier v. Commissioner.
Godier v. Commissioner
Docket No. 2648-66.
United States Tax Court
T.C. Memo 1969-172; 1969 Tax Ct. Memo LEXIS 125; 28 T.C.M. (CCH) 853; T.C.M. (RIA) 69172; August 19, 1969, Filed Richard E. Godier, pro se, 4230 Louisiana Ave., St. Louis, Mo. Michael J. Christianson, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax for the taxable years 1963 and 1964 in the respective amounts of $473.85 and $423. The only issue is whether the petitioner is entitled to dependency exemptions for each of his three children. Findings of Fact Some of the facts were stipulated and are incorporated herein by this reference. The petitioner is an individual who at the time of the filing of the petition herein was a resident of St. Louis, Missouri. He filed his returns for the taxable years 1963 and 1964 with the district director of internal revenue at St. Louis, Missouri. Petitioner was formerly *126 married to Rose Marie Godier. They had three children, Donald, who was born on May 21, 1950, Deborah who was born on July 30, 1951, and Michele who was born on March 14, 1957. In 1962 they purchased a home, in which they and their children resided at 1019 Woodbine Drive, St. Louis, Missouri, for about $15,500, which they owned jointly. The monthly payments on such home amounted to $109 per month, which included principal, interest, and taxes. The petitioner and Rose Marie separated on several occasions, the first time being in October 1962. They separated permanently in April 1963. The petitioner moved out of the house and orally agreed that his wife might continue to live in it until it was sold. On May 16, 1963, Rose Marie Godier was granted an absolute divorce from the petitioner by the Circuit Court of St. Louis County, Missouri. The court decreed that she should have the care, custody, and control of the three children and that the petitioner should be entitled to temporary custody [1] of the children in accordance with a stipulation which the parties had filed with the court. The court further decreed that the petitioner should pay Rose Marie $15 per week for the support of *127 each of the three children, that is, $45 per week. In the stipulation which the divorce court aproved the parties agreed that the residence at 1019 Woodbine Drive should be sold for the best market price; that the selling price should be used first to pay the mortgage note on the home; that any remaining portion realized should be used to repay a loan which had been obtained from the Anheuser-Busch Brewery Credit Association and to compensate Rose Marie for money expended in making the house payments on the property; and that any money remaining thereafter should be divided between the parties equally. In such stipulation it was agreed that Rose Marie should take ownership and full possession of all furniture owned by the parties and located in the residence. At all times during 1963 and 1964 Rose Marie lived in the Woodbine Drive residence with the children. Rose Marie married Chester Lee Seifried on October 5, 854 1963, and thereafter during the years in question he also resided in the *128 home. Commencing on May 16, 1963, the petitioner began paying to Rose Marie the support payments in accordance with the decree of the divorce court. In the years 1963 and 1964 he made support payments in the respective amounts of $1,410 and $2,280. He made no payments to her in 1963 prior to the divorce in support of the children. For the first four months of 1963 the petitioner made the payments on the Woodbine Drive property. Thereafter Rose Marie made all such payments. On July 6, 1964, the petitioner, by a quitclaim deed, transferred all his interest in the Woodbine Drive property to Chester Lee Seifried and Rose Marie Seifried, in consideration of the payment by them to him of $1,000, which was the amount he offered to take for his one-half of the equity in the property. Other than the $45 weekly payments, the only payments which petitioner made towards the support of the children were $10 each at Christmas time in 1963, $10 each at Christmas time in 1964 to Donald and Michele, birthday presents of $10 to each child in 1964, and $6.20 in 1963 for an encyclopedia year book. During 1963, commencing on June 20, 1963, the petitioner paid total premiums of $155.91 for life *129 insurance on himself, his ex-wife, and his three children. During 1964 he paid premiums for such insurance in the amount of $197.92. During the period of separation in 1963 none of the children stayed with the petitioner. After the divorce none of the children ever stayed with him with the exception of Donald who stayed with him for a period of three weeks in June 1964. During 1963 after the divorce, and during the entire year 1964, Deborah never visited her father except once, which was for a day and a night. During 1963 Michele visited her father approximately 4 or 5 weekends and in 1964 she visited him approximately 12 days. During 1963 after the divorce, and during the year 1964, Donald visited his father approximately one weekend each month. The Woodbine Drive residence contained three bedrooms. Petitioner's two daughters shared one bedroom and his son used one bedroom alone. The fair rental value of the residence at 1019 Woodbine Drive, unfurnished, was $150 per month during the taxable years 1963 and 1964. Its fair rental value, furnished, was $200 per month. Rose Marie Seifried was employed during the entire taxable year 1963, with net weekly earnings of approximately *130 $80. Her husband, Chester Seifried, received net weekly earnings in 1963 of approximately $100. During 1964 the combined annual net earnings of Chester and Rose Marie Seifried was approximately $9,000. During the year 1963 Rose Marie and Chester Seifried made the following general expenditures: Food
$2,800
Telephone, electricity and water
311
Heat
200
Baby sitter (rate of $15 per week)
220 In addition, in that year they incurred the following expenditures for the three children: Donald
Deborah
Michele
Clothing
$280
$250
$200
Medical, dental & prescriptions
60
50
10
Cleaning and pressing
20
20
10
School fees, books, lunches, etc
100
100
60
Entertainment and "allowance"
210
210
52
Haircuts or beauty shop
24
30
20
Musical instrument
125
Koury League
8
During 1964 Rose Marie and Chester Seifried made the following general expenditures: Food
$2,509.78
Gas, electricity, telephone, and other utilities
629.71
Dry Cleaning
140.75
Blue Cross (for whole family)
79.00 In addition, in that year they incurred the following expenditures for the three children: 855 Donald
Deborah
Michele
Clothing
$230.53
$325.24
$240.72
Medical, dental & prescriptions
39.00
159.97
17.95
Education (shop supplies)
5.00
Music lessons
34.25
Insurance(school)
2.75
2.75
2.50
Barber and beauty shop
40.50
45.00
30.00
Allowance
245.00
260.00
50.00
School lunches
95.00
95.00
66.50
School pictures
5.18
C.B. Radio, appurtances, etc
201.38
Bicycle
33.61
*131 In 1964 Rose Marie and Chester Seifried paid premiums on life insurance, allocating $42.37 to each of the children. From May 16, 1963 to December 31, 1963, Rose Marie Seifried furnished the three children support, in the form of use of furnishings of the residence, in the amount of $86 for each child. From January 1, 1964 until July 6, 1964, she furnished the three children support, in the form of furnishings for the residence, in the amount of $60 for each child. From July 6, 1964 to December 31, 1964, she furnished support, in the form of lodging (including furnishings) in the amount of $240 for each child. During the taxable year 1963 Rose Marie furnished as support for each child food in the amount of $659, utilities in the amount of $73.17, heat in the amount of $47.05 and child care (baby sitter) in the amount of $73.33. During the taxable year 1964 she furnished as support for each child food in the amount of $501.96, utilities in the amount of $125.94, dry clearning in the amount of $28.15 and medical insurance in in the amount of $15.80. For the taxable year 1963 the total support, exclusive of lodging supplied equally by petitioner and Rose Marie, furnished Donald was *132 $1,644.62, of which the petitioner furnished $482.07; such support furnished Deborah was $1,743.62, of which the petitioner furnished $482.07; and such support furnished Michele was $1,302.62, of which the petitioner furnished $482.07. For the taxable year 1964 the total support, exclusive of lodging supplied equally by petitioner and Rose Marie, furnished Donald was $1,851.01, of which the petitioner furnished $780; such support furnished Deborah was $1,904.06, of which the petitioner furnished $770; and such support furnished Michele was $1,438.31, of which the petitioner furnished $780. For the taxable year 1963 the petitioner did not furnish over half the support of any of his children. For the taxable year 1964 he did not furnish over half of the support of his children, Donald and Deborah, but did furnish over half the support of his daughter Michele. In his return for each of the taxable years 1963 and 1964 the petitioner claimed a dependency exemption of $600 for each of his three children. In the notice of deficiency the respondent disallowed the three claimed dependency exemptions for each year. Opinion The respondent determined that the petitioner did not furnish *133 over half of the support of his three children in either of the taxable years 1963 or 1964, and therefore held that he was not entitled, under section 151 of the Internal Revenue Code of 1954, to deduct dependency exemptions claimed by the petitioner for them. We have found as facts that the petitioner did not furnish over half of the support of any of his three children during the taxable year of 1963; that during the taxable year 1964 he did not furnish over half of the support of his children, Donald and Deborah; but that in 1964 he did furnish over half of the support of his daughter Michele. In reaching our conclusion we have eliminated from the calculation of support furnished by the petitioner and his ex-wife, Rose Marie, premiums which they paid on life insurance policies. See Aaron F. Vance, 36 T.C. 547. The petitioner and Rose Marie jointly owned a residence which they occupied with their children prior to their separation. They continued to own the residence jointly until July 6, 1964, when petitioner executed a quit-claim deed to the property in favor 856 of Rose Marie and her husband. The measure of support furnished in the *134 form of lodging is the fair rental value thereof. See Emil Blarek, 23 T.C. 1037. And in the case of jointly owned property it is considered that the co-owners contributed support equally, it being immaterial who made payments with respect to the property. See Eva L. Lindberg, 46 T.C. 243. The respondent takes the position that since the petitioner agreed to the use of the premises by Rose Marie after the divorce, it should be considered that at all times after the divorce Rose Marie alone furnished the lodging for the children, citing Delbert Bruner, 39 T.C. 534, and Wood v. United States, (D. Ore.) 287 F. Supp. 90. However, those cases are distinguishable. In each of those cases the divorce court had approved property settlements under which the divorced wife was granted the exclusive use and possession of jointly owned residences, and this was the basis upon which it was held that the wife thereafter furnished the lodging to the dependent children. In the instant case the parties entered into a stipulation with regard to their property, which was approved by the divorce court, but Rose Marie was not granted the exclusive use and *135 possession of the residence. In this respect the instant case is similar to Eva L. Lindberg, supra.We think it must be considered that the petitioner, in agreeing orally to the use of the residence by Rose Marie until such time as the property might be sold, did not grant her the exclusive use of the property; rather, to the extent he had a right to the use thereof, he made the property available for the support of the children. Accordingly, it must be considered that during 1963, up to the time of the divorce on May 16, the petitioner and Rose Marie equally furnished lodging (including house furnishings) for the children, and that after the divorce up to the time petitioner conveyed his interest in the home to Rose Marie and her husband, he and Rose Marie equally furnished the children with lodging (exclusive of the furnishings). Accordingly, in our findings of support we have not included any amounts on account of such support furnished by each equally. However, from the time of the divorce until the time petitioner conveyed his interest in the residence, Rose Marie was, pursuant to the stipulation approved by the divorce court, the owner of the house furnishings, and *136 for that period she furnished support for the children in this respect. Furthermore, from July 6, 1964 until the end of 1964, she alone furnished lodging (including house furnishings) for the children. In computing total support of the children appropriate amounts have been included for lodging which Rose Marie alone furnished. In view of our findings, the respondent's determination is approved except that for the taxable year 1964 the petitioner is entitled to the deduction of a dependency exemption for his daughter Michele. Decision will be entered under Rule 50. Footnotes
1. The petitioner had the right to custody of Deborah and Michele on alternating Saturdays and Sundays from 11:00 a.m. to 6:00 p.m., and temporary custody of Donald "at reasonable times."↩