EUGENE ANDERSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Anderson v. Commissioner
Docket No. 9049-82.
United States Tax Court
T.C. Memo 1984-671; 1984 Tax Ct. Memo LEXIS 6; 49 T.C.M. (CCH) 410; T.C.M. (RIA) 84671; December 27, 1984. Eugene Anderson, pro se. Thomas J. Kane, for the respondent. PARKER MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency of $82 in petitioner's 1978 Federal income tax. The issues for decision are: (1) Whether petitioner is entitled to a dependency exemption under sections 151(e) and 152(a) [1] for each of his three sons; and (2) Whether petitioner is entitled to a theft loss deduction under section 165(c)(3) in the amount of $675.50. [2]
*9 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Chicago, Illinois, at the time he filed his petition herein. Petitioner timely filed his 1978 Federal individual income tax return (Form 1040) with the Internal Revenue Service Center in Kansas City, Missouri. 1. Dependency Exemptions
On his 1978 return, petitioner claimed a dependency exemption for each of his three sons, David Robinson, Roland Fletcher, and Jonathan Fletcher (collectively, petitioner's sons). The return indicated that the children lived with petitioner. During 1978, David was 16 years of age, Roland was 13 years of age, and Jonathan was 6 years of age. During that year, David lived with his mother, Barbara Robinson (Ms. Robinson), separate and apart from petitioner. Roland and Jonathan lived with their mother, Julia Fletcher (Ms. Fletcher), also separate and apart from petitioner. Petitioner has never been married to Ms. Robinson or Ms. Fletcher (collectively, the mothers), and during 197, he was an unmarried person. During the taxable year *10 1978, petitioner was under order from the Circuit Court of Cook County to make payments and made such payments through the Illinois Department of Public Aid (IDPA) for the support of David, Roland, and Jonathan. IDPA delivered petitioner's support payments, along with public assistance funds for the support of petitioner's sons, to the mothers. The respective contributions for the support of petitioner's sons made in this manner by petitioner and IDPA during the taxable year 1978 were as follows: David
Roland
Jonathan
Petitioner's payments
$ 406.00
$ 390.00
$ 390.00
IDPA's assistance
[3] 635.60
651.60
651.60
Total Support
Payments
$1,041.60
$1,041.60
$1,041.60 At trial, petitioner asserted that he made various expenditures in suppport of David, Roland, and Jonathan during the *11 taxable year 1978 in addition to his payments through IDPA. To support his claim, petitioner presented copies of a few receipts purportedly from various retailers. [4] Some of these receipts do evidence actual expenditures made by petitioner in support of his sons, in the following amounts: [5]
Son
Expenditures
David
$131.55
Roland
270.96
Jonathan
168.24 Therefore, petitioner's total payments for the support of his sons during the taxable year 1978 were as follows: David
Roland
Jonathan
Payments
through IDPA
$406.00
$390.00
$390.00
Other substantiated
expenditures
131.55
270.96
168.24
Total
$537.55
$660.96
$558.24
*12 Petitioner and IDPA were the sole contributors to the support of petitioner's sons during the taxable year 1978. The total amounts expended therefor during such taxable year were as follows: David
Roland
Jonathan
IDPA's assistance
$ 635.60
$ 651.60
$ 651.60
Petitioner's payments
through IDPA
and other substantiated
expenditures
537.55
660.96
558.24
Total Support
Payments:
$1,173.15
$1,312.56
$1,209.84
2. Theft Loss
On the Schedule A (Itemized Deductions) attached to his 1978 return, petitioner claimed a net theft loss deduction in the amount of $675.50. This deduction purportedly represents the value of (1) two men's suits and an unspecified number of men's socks, underwear, and T-shirts with a combined value of $375, and (2) cash in the amount of $300, [6] that were allegedly stolen during a burglary of an apartment located at 8203 King Drive, Chicago, Illinois. That address is an apartment which was maintained by a Saundra Humphrey (Ms. Humphrey). A burglary at that apartment was reported to the police on February 9, 1978. Petitioner claims that on such date he was sharing the apartment with Ms. Humphrey. However, *13 only Ms. Humphrey is listed as the complainant and victim of the burglary on the Supplementary Report (the supplementary report) of the Chicago Police Department dated March 18, 1978, regarding the burglary. The supplementary report indicates that only cash in the amount of $110 and two stereo speakers with a combined value of $80 were taken from the apartment during the burglary. Petitioner does not claim that these items belonged to him, but that the above described articles of men's clothing and cash were also taken during the burglary. The record does not contain any competent, probative evidence corroborating petitioner's testimony about the theft loss deduction. [7]
*14 In his statutory notice of deficiency dated January 28, 1982, respondent disallowed the dependency exemption petitioner claimed for each of his sons and also disallowed the theft loss deduction claimed by petitioner. OPINION 1. Dependency Exemptions
Section 151(a) provides that "[i]n the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income." During the taxable year in issue, section 151(e)(1) [8] allowed an exemption for a "dependent" as follows: An exemption of $750 for each dependent (as defined in section 152)-- (A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $750, or (B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student. Section 152(a) defines a dependent as follows: For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the *15 taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer [9]: (1) A son or daughter of the taxpayer * * *. [Emphasis supplied.] Petitioner bears the burden of proving his contributions to, and the total amount of, the support for each of *16 his sons during 1978. In other words, he must establish that he provided over one-half of the total support for each child. Seraydar v. Commissioner,50 T.C. 756, 760 (1968); Vance v. Commissioner,36 T.C. 547, 549 (1961); Rule 142(a). Although petitioner need not conclusively prove the exact or precise total amount of support for each of his sons during 1978, he must present convincing evidence that the support he provided exceed one-half of the total. Seraydar v. Commissioner,supra,50 T.C. at 760; Stafford v. Commissioner,46 T.C. 515, 517, 518 (1966) and cases cited therein. He has carried his burden only with respect to Roland. We have found that the total amounts of support for each of petitioner's sons (and one-half thereof) during taxable year 1978, and petitioner's contributions thereto, were as follows: David
Roland
Jonathan
Total support
$1,173.15
$1,312.56
$1,209.84
One-half of total
support
586.58
656.28
604.92
Support provided
by petitioner
537.55
660.96
558.24
We based our findings on petitioner's uncontroverted testimony that only he and *17 IDPA contributed to his sons' support during 1978. [10] We found petitioner's testimony in this regard to be credible and worthy of belief. However, in determining the amount of petitioner's contribution to the support of each of his sons, we rejected some of petitioner's testimony in regard to a number of documents he offered into evidence as receipts for items allegedly purchased for his sons during 1978. Four such documents relate to bicycles that petitioner purchased for Roland and Jonathan. Two of these documents are Sears, Roebuck and Co. (Sears) shipping *18 tickets, one for each bicycle. The third document is apparently a Sears invoice for both bicycles. Each shipping ticket indicates the retail price for the bicycle to which it relates; the invoice states the same information for both bicycles in the aggregate. Both shipping tickets and the invoice indicate a ten percent employee discount on the retail price petitioner received and the imposition of a five percent sales tax on the net retail price. As a result, these documents reveal the actual cost to petitioner for the bicycles to be as follows: [11]
Roland's
Jonathan's
Both
bicycle
bicycle
bicycle
(per shipping
(per shipping
(per
ticket)
ticket)
invoice)
Retail price
$69.99 $58.99 $128.98 Ten percent
employee's discount
(7.00)
(5.90)
(12.90)
Five percent sales
tax
3.15 2.65 5.80 Actual Cost
$66.14 $55.74 $121.88 *19 Despite these figures, petitioner testified that he paid $69.99 for Roland's bicycle and $58.99 for Jonathan's bicycle (the retail prices). In determining the amount of Roland's and Jonathan's support supplied by petitioner during 1978, we have included only the actual cost of their respective bicycles as indicated in the immediately preceding table, $66.14 and $55.74, respectively. [12]
The fourth document relating to the bicycles is the receipt petitioner actually received when he paid for them. It simply indicates that the amount of $121.88 (the actual cost for both bicycles) was paid. Petitioner, however, stated at trial that this receipt was for clothing he purchased for Roland and Jonathan. We reject petitioner's testimony. Not only is the dollar amount indicated on the receipt the exact amount of the actual cost for both bicycles, but the following is stamped in bold letters *20 on the receipt: "CATOLOG [sic] PURCHASE PER ATTACHED" and "MDSE DELIVERED HOMAN AVE STORE PLATFORM-A." We think the only reasonable conclusion is that the "attached" referred to is the invoice described above, which itemizes the price information for the two bicycles. Moreover, the receipts and invoice for the bicycles refer to the Homan Avenue store. Thus, we did not include in petitioner's contributions to the support of Roland or Jonathan any amount based on this receipt in addition to the net amounts already included for their bicycles. Petitioner also presented copies of three other purported receipts as evidencing purchases of clothing for his sons. These particular "receipts" do not state the name of the retailer from whom the alleged purchases were made. Petitioner testified that the three receipts were from a Bob Marlow, a retail clothier and petitioner's personal acquaintance. We might have accepted petitioner's testimony and the validity of the receipts were it not for the irregularities contained in the receipts. The first receipt itemizes prices for various articles of clothing totalling $273, but the receipt, without explanation, lists a total purchase *21 in the amount of $389, $116 more than the actual total of the itemized prices. Furthermore, the receipt does not indicate the payment of any sales tax. Our suspicions about the first receipt taint the other two receipts bearing no retailer's name.However, we need not rely on that taint alone. There are arithmetical errors in both of the other receipts and each of them, without explanation, shows sales tax calculated at a six percent rate rather than the five percent rate indicated on other receipts produced by petitioner from recognized retailers such as Sears. For these reasons, we have not included the amounts indicated on the three purported receipts in determining petitioner's contributions to his sons' support during taxable year 1978. In conclusion, for taxable year 1978, petitioner is entitled to a dependency exemption for Roland, but not for David or Jonathan. 2. Theft Loss
Section 165(a) allows as a deduction "any loss sustained during the taxable year and not compensated for by insurance or otherwise." Other than business losses or losses in transactions entered into for profit, section 165(c) limits the deductions available to individuals to losses *22 arising from casualties or theft. [13] During the taxable year in issue, section 165(c)(3) also limited the amount deductible as a theft loss to the amount of such loss exceeding $100. Deductions are a matter of legislative grace, and taxpayers must satisfy the specific requirements of the deductions they claim. Deputy v. du Pont,308 U.S. 488 (1940); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934). Taxpayers bear the burden of proving they are entitled to such deductions. *23 Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). These rules apply to deductions claimed for theft losses. Allen v. Commissioner,16 T.C. 163, 166 (1951). To satisfy his burden, petitioner must present evidence which, absent positive proof, reasonably leads us to conclude, inter alia, that the articles for which the theft loss deduction is claimed were in fact stolen, and that petitioner owned such articles. Allen v. Commissioner,supra,16 T.C. at 166; Lupton v. Commissioner,19 B.T.A. 166 (1930). Petitioner has failed to present such evidence. Petitioner testified that two men's suits, an unspecified number of men's socks, underwear, and T-shirts, and cash in the amount of $300, all belonging to him, were stolen in a burglary at an apartment that he was sharing with Ms. Humphrey at the time the burglary occurred. Ms. Humphrey did not appear or testify at the trial. To corroborate his testimony, petitioner offered into evidence a supplementary report of the burglary prepared by the Chicago Police Department. The supplementary report lists only Ms. Humphrey as the complainant and victim *24 of the burglary and indicates that only cash in the amount of $110 and two stereo speakers with a combined value of $80 were stolen. Petitioner offered into evidence a document that he characterized as part of an additional report of the burglary made by the Chicago Police Department. We refused to receive this document into evidence because it contains no information relating it or the items listed thereon to the supplementary report, to the burglary, or more importantly to petitioner. A taxpayer's testimony, if we find it to be credible, may be sufficient to prove he is entitled to a deduction.However, we need not accept such testimony, even when it is uncontroverted, if it is "improbable, unreasonable or questionable." Archer v. Commissioner,227 F. 2d 270, 273 (5th Cir. 1955), affg. a Memorandum Opinion of this Court. While a taxpayer perhaps need not produce a police report to substantiate that his belongings were stolen, particularly if his testimony otherwise provides sufficient, credible, substantiating detail, the presentation of a police report that fails to show any connection between him and the stolen items casts a heavy shadow over his *25 testimony. That is particularly true where, as here, the Court is not persuaded that petitioner suffered a loss from theft. Simply stated, petitioner has not met his burden of proving that his belongings were stolen. Therefore, respondent's disallowance of the claimed theft loss deduction must be sustained. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. In his notice of deficiency, respondent allowed petitioner the zero bracket amount rather than the lesser amount of itemized deductions remaining after disallowance of the theft loss deduction and denied petitioner's claimed filing status as head of household. The allowance of the zero bracket amount was an automatic adjustment. Petitioner did not assign any error as to the disallowance of head of household status, nor was the issue tried by consent of the parties at trial. Thus, that issue is deemed conceded by petitioner and we will not address it further. See Rules 34(b)(4) and 41(b)(1). Respondent also allowed petitioner additional deductions for repair and depreciation expenses attributable to petitioner's rental properties, but those deductions were taken into account in the statutory notice and are not before the Court.↩
3. The parties have stipulated that the total contributions to David's support made through IDPA by petitioner and IDPA amounted to $1,041.60, the portion thereof attributable to petitioner's contribution equalling $406. Thus, the parties' stipulation that the amount contributed by IDPA was $635 (rather than $635.60) is obviously a typographical error.↩
4. Petitioner also asserted that he had often requested that the mothers give him receipts indicating that petitioner's sons had received the items purchased by such expenditures, but that neither complied with these requests. Neither mother appeared at the trial. ↩
5. The totals given in the text are composed of the following items and amounts: David
Roland
Clothing
$ 47.60
Clothing (1/2 total)
$112.50
Coat
83.95
Bicycle
66.14
Clothing
36.42
Total
$131.55
Camera, etc.
55.90
Total
$270.96
↩
Jonathan
Clothing (1/2 total)
$112.50
Bicycle
55.74
Total
$168.24
6. The total value of items petitioner claims to have lost by theft is $675, yet the Schedule A attached to petitioner's 1978 return indicates a theft loss in the amount of $775.50, which was then reduced by the $100 floor for theft loss deductions, resulting in a claimed deduction in the amount of $675.50. This discrepancy is unexplained. ↩
7. Petitioner offered into evidence a copy of what petitioner characterized as part of an additional report of the burglary made by the Chicago Police Department.This document lists a number of items, mostly consisting of women's apparel, but including two men's suits and an unspecified number of socks, underwear, and T-shirts with a combined value of $375, and cash in the amount of $300. This document, while it contained the same number (Z-044654) as the supplementary report, was dated February 28, 1978, and contained a stamped notation "RESTRICTED INFORMATION HAS BEEN DELETED--RECORD INQUIRY SECTION--CHICAGO POLICE DEPARTMENT." That document was not received into evidence because it contained no information relating it or the items listed thereon to the supplementary report, to the burglary of February 9, 1978, or more importantly to petitioner. Ms. Humphrey did not appear or testify at the trial.↩
8. Section 151(e)(1) has been amended several times since the taxable year in issue. See sec. 426(a) of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494, 804, effective for taxable years beginning after December 31, 1984; sec. 104(c) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 189, 1981-2 C.B. 256↩, 267, effective for taxable years beginning after December 31, 1984; and sec. 102(a) of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2771, 1978-3 (Vol. 1) C.B. xi, 5, effective for taxable years beginning after December 31, 1978. 9. Section 152(c) sets out exemption rules for multiple support agreements. Section 152(e) provides special rules dealing with exemptions for children of parents who are divorced, legally separated under a decree of divorce or separate maintenance, or who are separated under a written separation agreement.Neither applies herein.↩
10. Petitioner testified that because he maintained a close relationship with each of his sons, he personally knew that, other than the funds he and IDPA provided, his sons did not receive any support from the mothers or anyone else during the taxable year 1978. Petitioner further explained that his sons' housing costs and other essential expenses were included in the formula by which the amounts of IDPA's and petitioner's contributions to their support were determined, and that such costs and expenses were covered by those support contributions. Respondent did not challenge petitioner's testimony in this regard.↩
11. Although these documents identify one of the bicycles as a woman's bike, we have accepted petitioner's rather peculiar explanation that he purchased a woman's bicycle for Jonathan because it was on sale, was smaller, and could be used by Jonathan who was a rather small boy for his age. Jonathan was only six years old at the time, and we rather doubt that he could use a woman's bike. However, we allowed the $55.74 for Jonathan, because even including that amount petitioner has failed to establish that he furnished over half of Jonathan's support.↩
12. Respondent does not contend that the bicycles do not constitute support. See generally sec. 1.152-1(a)(2)(i), Income Tax Regs.; McKay v. Commissioner,34 T.C. 1020 (1960); Muracca v. Commissioner,T.C. Memo. 1984-234↩ and cases cited therein.
13. During the taxable year in issue, section 165(c), in pertinent part, provided as follows: In the case of an individual, the deduction under subsection (a) shall be limited to-- (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. * * *↩